UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR17-5188RBL |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR BOND PENDING APPEAL |
| GERALD C. CARLSON, | |
| Defendant. | |

THIS MATTER is before the Court on Defendant Carlson's renewed Urgent Motion for Release Pending Appeal [Dkt. #61-1, No. 18-30096]. Carlson initially filed his motion in the Ninth Circuit, and that court referred the motion here to consider whether exceptional circumstances for bail pending appeal exist under 81 U.S.C. § 3145(c) [Dkt. #87, No. 18-30096]. The Court has reviewed the materials, including the Declaration of Dr. James Pelton [Dkt. #90]. For the following reasons, the Motion for Release Pending Appeal is DENIED.

**I. FACTS**

Magistrate Judge Creatura entered an order releasing Carlson on bond pending his trial. [Dkt. Nos. 16, 17, 20, 22]. While he was on bond, Carlson committed two violations of the terms of his release. On October 12, 2017, the magistrate judge found that Carlson violated the terms

of his bond by using controlled substances. [Dkt. #35]. On December 12, 2017, the magistrate

judge found that he violated the terms of his bond by using alcohol. [Dkt. #37].

A jury found Carlson guilty of one count of possessing 50 grams or more of

methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

The jury also found Carlson guilty of possessing a firearm in furtherance of a drug-trafficking

crime in violation of 18 U.S.C. § 924(c)(1)(A) and (2). This Court remanded Carlson to custody

immediately after the jury's guilty verdicts. [Dkt. #61].

This Court entered judgment and sentenced Carlson to 180 months of imprisonment, the

mandatory minimum sentence applicable to Carlson's offenses. [Dkt. #77]. He has not

previously sought release pending appeal. His sentence on the narcotics count alone was 120

months. [Dkt. #77].

## II. THE MOTION

Carlson now moves for release pending appeal. To date, the opening and answering

briefs have been filed with the Ninth Circuit and Carlson's reply brief is due shortly. *See United

States v. Carlson*, C.A. No. 18-30096. In his motion, Carlson argues that he has a hip condition

that, together with his congestive heart failure and diabetes, constitutes exceptional

circumstances justifying his release.

## III. ANALYSIS

In general, persons convicted of federal crimes are not eligible for release pending appeal

unless a court finds "'(A) by clear and convincing evidence that the person is not likely to flee or

pose a danger to the safety of any other person or the community if released . . . and (B) that the

appeal is not for the purpose of delay, *and* raises a substantial question of law or fact likely to

result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of

imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.'" *United States* v. *Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003) (emphasis added) (quoting 18 U.S.C. § 3143(b)(1)). "A substantial question is 'fairly debatable,' or 'fairly doubtful.'" *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (internal citations omitted) (substantial question must be "one of more substance than would be necessary to a finding that it was not frivolous.") (quotation omitted).

Thus, while a defendant is presumptively entitled to release before trial, Congress, through Section 3143(b), presumes detention *after* an adjudication of guilt. Quoting the legislative history, the Second Circuit has explained that, "'[o]nce guilt . . . has been established[,] there is no reason to favor release pending imposition of sentence or appeal.' . . . [T]he government [has a] strong and obvious . . . interest in detaining defendants who have been found guilty beyond a reasonable doubt of serious crimes: such detention promotes public safety by removing a presumptively dangerous person from the community; it also encourages general respect for the law by signaling that a guilty person will not be able to avoid or delay imposition and service of the sentence prescribed by law." *United States v. Abuhamra*, 389 F.3d 309, 319-320 (2d Cir. 2004) (*quoting* S. Rep. No. 225, 98th Cong., 1st Sess. 26 (1983)).

More importantly, for defendants like Carlson, who have been convicted of narcotics offenses that carry a maximum penalty of ten years or more of imprisonment, detention following a guilty verdict is mandatory. *See* 18 U.S.C. § 3143(b)(2) and 18 U.S.C. § 3142(f)(1)(C). Such defendants are only eligible for bond pending appeal if, in addition to the showing required under 18 U.S.C. § 3143(b)(1), the defendant also "clearly show[s]" that "exceptional reasons" justify release pending appeal. 18 U.S.C. § 3145(c); *see also Garcia*, 340

F.3d at 1015 ("exceptional reasons" requirement is "an additional condition" imposed by § 3145(c)); *United States v. Larue*, 478 F.3d 924, 925 (8th Cir. 2007) ("the *only* possible avenue of post-trial release would be the showing of the existence of 'exceptional reasons why [his] detention would *not* be appropriate'") (emphasis added) (quoting § 3145(c)).

Carlson has not met either the general standard or the one that applies to defendants who have been convicted of serious drug offenses. He has not met the general standard because he cannot satisfy the general test for bond pending appeal. He has not shown by clear and convincing evidence that he is unlikely to pose a danger to the safety of the community in light of his use of controlled substances when he was released pending trial. While he contends that he had only minor violations of the terms of his supervised release, his use of controlled substances is a signal that he remained involved in the drug world, which poses a risk to the community. Additionally, Section 3145(c) requires a higher showing for serious drug offenses because they are presumed dangerous to the community.

And, given the length of his sentence, Carlson also has incentive to flee. Although he suffers from medical conditions, this alone will not keep him from fleeing a lengthy period of incarceration.

More importantly, he also cannot show that his appeal is likely to result in an order reversing his conviction, affording him a new trial, or reducing his sentence. Carlson presses two issues on appeal, both of which lack merit. His contention that he was denied counsel of his choosing fails to establish an abuse of discretion because his counsel represented that she was prepared to go to trial, his motion came at the very last minute, he failed to identify alternative counsel, and the conflict between Carlson and his counsel was not irreconcilable. Further, Carlson had incentive to delay the trial and remain free on bond, and the court identified

scheduling conflicts that meant that granting the motion would have burdened the court's schedule as well as inconvenienced the government's witnesses and the potential jurors who were waiting for the trial to begin.

Carlson's second contention, that this Court erred in allowing Special Agent Jewell to testify regarding his experience investigating drug criminals and their use of firearms, lacks merit. The testimony was short, general, and helped the jury to understand how the items found in Carlson's home showed that he was a dealer and not merely a well-supplied user.

Even if Carlson could meet the general standard for post-conviction release, Carlson's proffered "exceptional reasons"—his health conditions—fall far short of §3145(c)'s exacting release standards. The "exceptional reasons" that Carlson sets out in support of his Section 3145(c) claim do not demonstrate that he should be released. Carlson essentially argues that his health makes prison unusually harsh for him, especially without hip replacement surgery, and that he should be released so that he can have hip surgery. *United States v. Koon*, 6 F.3d 561, 564 n.8 (9th Cir. 1993) (recognizing that ill health "might" make confinement unduly harsh). But that is not an exceptional reason. Carlson's evidence that his in-custody medical treatment is inadequate is scant. The Bureau of Prisons designated Carlson for transfer to the Federal Medical Center at Rochester months ago, and the Court is informed that the transfer is complete, because the necessary bed is available.

Carlson asks this Court for release to permit a hip surgery but by his own admission such a surgery could not occur for at least two months because of his doctor's schedule. *See* [Dkt. #88 at 4] (noting that his surgeon is scheduling "two months out"). Carlson's claim that he will die without hip replacement surgery depends on his assertion that he was scheduled for hip replacement surgery before he was incarcerated and the surgery was urgently necessary to

addressing his heart condition and his diabetes. But the records he cites show that his physician recommended hip replacement surgery because "the patient has failed appropriate non-operative care" and "would like to proceed with surgical intervention." [Dkt. #88-1 at 19]. They do not show that his physician concluded that he would die prematurely without the surgery, or even that the surgery was actually scheduled. *Id*. at 19, 23. And while he has submitted medical records, he did not submit any declarations from his doctors regarding the risks that such a surgery would entail given his other medical conditions and his unwillingness to follow his doctor's recommendations.

Carlson's records reflect that he told Bureau of Prisons physicians that he was planning to have surgery but had been advised by his physician to make some lifestyle changes first. [Dkt. #88-2 at 6] (Carlson "reported that he was scheduled to have left hip replacement prior to this incarceration but he had to stop chewing tobacco, eat healthy, and stop using street drugs.").

Dr. Pelton reviewed the Bureau of Prison Electronic Medical Record (BEMR) and was unable to locate any record suggesting such surgery had been approved by a medical doctor, or any treating physician. In the opinion of Dr. Pelton, because of his weight, and his severe cardiomyopathy with low Ejection Fraction, Carlson is currently at a high risk of serious complications were he to have hip replacement surgery. Should he meet the criteria for hip replacement surgery and have hip replacement surgery while in the BOP, such surgeries are typically completed when an inmate is designated to medical centers or other locations with in-house Physical Therapy, due to the importance of post-operative physical therapy. In-house Physical Therapy is available at FMC Rochester.

Moreover, Dr. Pelton's review of the BEMR records also indicates his diabetes appears to be well controlled, as demonstrated in recent labs. Additionally, his review indicates that the

past episode of hypoglycemia was not the result of the wrong insulin, but would appear to have been due to insulin being given and then possibly Carlson not eating after receiving the insulin.

Given his move to the Federal Medical Facility in Rochester, Minnesota, there is little reason now to release him on unsubstantiated assertions.

Because Carlson has failed to establish that exceptional reasons justify his release, the Urgent Motion for Release Pending Appeal is **DENIED.**

**IT IS SO ORDERED.**

Dated this 16th day of May, 2019.

Ronald B. Leighton
United States District Judge